| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Kevin T. Simon, Esq. - SBN 180967<br>SIMON RESNIK HAYES LLP<br>Attorneys at Law<br>15233 Ventura Blvd., Suite 250<br>Sherman Oaks, CA  91403<br>Tel: (818) 783-6251<br>Fax: (818) 783-6253<br>E-mail: kevin@srhlawfirm.com<br><br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Debtor(s) | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – SAN FERNANDO VALLEY DIVISION**

| In re:<br><br>    DENNY TEDESCO,<br>    SUZIE TEDESCO<br><br><br><br><br><br>                                      Debtor(s). | CASE NO.: 1:16-bk-11356-MB<br>CHAPTER: 13<br><br>**DEBTOR'S NOTICE OF MOTION AND**<br>**MOTION TO AVOID JUNIOR LIEN ON**<br>**PRINCIPAL RESIDENCE**<br>**[11 U.S.C. § 506(d)]**<br><br>DATE: 07/07/2016<br>TIME:  9:30 am<br>COURTROOM: 303 |

1. TO:   The Honorable Martin R. Barash, the Chapter 13 Trustee and All Interested Parties:

2. NOTICE IS HEREBY GIVEN that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an order granting the relief set forth in the motion and accompanying supporting documents served and filed herewith.

3. **Hearing Location:**

   ☐ 255 East Temple Street, Los Angeles, CA 90012          ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☒ 21041 Burbank Boulevard, Woodland Hills, CA 91367    ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

4. **Your rights may be affected.**  You should read these papers carefully and discuss them with your attorney, if you have one. (*If you do not have an attorney, you may wish to consult one.*)

5. **Deadline for Opposition Papers:** This motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than 14 days prior to the above hearing date. If you fail to file

---

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2012*                                      Page 1                                      **F 4003-2.4.JR.LIEN.MOTION**

a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

6.  **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:**  The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according the judge's self-calendaring procedures.

Date:  05/04/2016

SIMON RESNIK HAYES LLP
Printed name of law firm (if applicable)

Kevin T. Simon, Esq.
Printed name of Debtor or attorney for Debtor

Signature of Debtor or attorney for Debtor

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2012                                 Page 2                          F 4003-2.4.JR.LIEN.MOTION

**MOTION TO AVOID JUNIOR LIEN ON PRINCIPAL RESIDENCE [11 U.S.C. § 506(d)]**
(DEBTOR: DENNY TEDESCO, SUZIE TEDESCO                    )

**NAME OF CREDITOR HOLDING JUNIOR LIEN (Respondent):**  Wells Fargo Bank, N.A., its Successors and/or Assigns

1. **Property at Issue:** Debtor moves to avoid the junior deed of trust, mortgage or other encumbrance (Lien) encumbering the following real property (Property), which is the principal residence of debtor.

   Street address:          22640 Califa Street

   Unit number:

   City, state, zip code:    Woodland Hills, CA 91367

   Legal description of Property or document recording number (*including county of recording*):

   _____

   _____

   ☒ See attached page for legal description of Property or document recording number.

2. **Case History:**

   a. A voluntary petition under chapter ☐ 7 ☐ 11 ☐ 12 ☒ 13 was filed on (*specify petition date*): 05/04/2016        .

   b. ☐ An Order of Conversion to chapter 13 was entered on (*specify date*): _____.

3. **Grounds for Avoidance of Junior Lien:**

   a. As of (*date of title review*) 05/04/2016        , the Property is subject to the following liens in the amounts specified securing the debt against the Property that the Debtor seeks to have treated as indicated:

      (1) (*Name of holder of 1st lien*) Specialized Loan Servicing, LLC.        in the amount of $ 614,604.34        .

      (2) (*Name of holder of 2nd lien*) Wells Fargo Bank, N.A.        in the amount of $ 87,041.44        ☒ is ☐ is not  to be avoided;

      (3) (*Name of holder of 3rd lien*) _____ in the amount of $ _____ ☐ is ☒ is not  to be avoided;

      ☐ See attached page for additional lien(s).

   As of (*date of valuation/appraisal*) 04/16/2016        , Property is worth no more than (*value per valuation/appraisal*) $ 600,000.00        .

   b. As a result, each Respondent's Lien encumbering the Property is wholly unsecured.

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2012                                    Page 3                          **F 4003-2.4.JR.LIEN.MOTION**

c.  **Evidence in Support of Motion:**

(1) ☒ The amount of the lien identified in paragraph 3(a)(1) is based on (*type of evidence*)
     Recent Billing Statement_____, attached hereto and identified as Exhibit _A_ .

(2) ☒ The amount of the lien identified in paragraph 3(a)(2) is based on (*type of evidence*)
     Recent Payoff Statement_____, attached hereto and identified as Exhibit _B_ .

(3) ☐ The amount of the lien identified in paragraph 3(a)(3) is based on (*type of evidence*)
     _____, attached hereto and identified as Exhibit ___ .

(4) ☒ The relative priority of the liens encumbering the Property is established by evidence attached as
     Exhibit _C & D_

(5) ☒ The value of the Property from paragraph 3(b) is based on (*type of evidence*)
     Appraisal_____, attached as Exhibit _E_ .

(6) ☒ Debtor submits the attached Declaration(s).

(7) ☐ Other evidence (*specify/identify supplemental evidence*): _____
     _____, attached as Exhibit ___.

d.  **WHEREFORE, Debtor prays that this court issue an order granting this motion and establishing that:**

(1) The Property is valued at no more than (*requested value*) $ _600,000.00_____.

(2) No payments are to be made on the secured claim of the Respondent, and regular mortgage maintenance
    payments are not to be made, before the Debtor's ☒ completion of the chapter 13 plan, or ☐ receipt of a
    chapter 13 discharge.

(3) Respondent's(s') claim on the junior position lien(s) shall be allowed as a nonpriority general unsecured
    claim(s) in the amount per filed Proof of Claim.

(4) The avoidance of the Respondent's(s') junior lien(s) is contingent upon: Debtor's ☒ completion of the
    chapter 13 plan, or ☐ receipt of a chapter 13 discharge.

(5) The Respondents shall retain its/their lien(s) in the junior position for the full amount due under the
    corresponding note and lien in the event of either the dismissal of the Debtor's chapter 13 case, the
    conversion of the Debtor's chapter 13 case to any other chapter under the United States Bankruptcy Code, or
    if the Property is sold or refinanced prior to the Debtor's ☒ completion of the chapter 13 plan or ☐ receipt of
    a chapter 13 discharge.

(6) In the event that the holder of the first position lien or any senior lien on the Property forecloses on its interest
    and extinguishes the Respondent's(s') lien rights prior to the Debtor's completion of the chapter 13 plan and
    receipt of a chapter 13 discharge, the Respondent's(s') lien(s) shall attach to the proceeds greater than
    necessary to pay the senior lien, if any, from the foreclosure sale, subject to the priority of any such junior
    lien(s).

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2012                                    Page 4                         **F 4003-2.4.JR.LIEN.MOTION**

e.  ☐  See attached continuation page for additional provisions.

Date:  05/04/2016

Respectfully submitted,

_____
Signature of Debtor or attorney for Debtor

 Kevin T. Simon, Esq.
_____
Printed name of Debtor or attorney for Debtor

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2012                          Page 5                          F 4003-2.4.JR.LIEN.MOTION

## DECLARATION OF DENNY TEDESCO IN SUPPORT OF MOTION TO AVOID JUNIOR LIEN ON PRINCIPAL RESIDENCE OF WELLS FARGO BANK, N.A.

I, Denny Tedesco, do hereby declare that all of the following is true and correct to the best of my personal knowledge and if called upon as a witness could and would competently testify to the truthfulness of all of the below statements.

1. I am the Debtor in the instant bankruptcy proceeding, case number 1:16-bk-11356-MB.

2. I filed bankruptcy to save my principal residence located at 22640 Califa Street Woodland Hills, CA 91367 ("Property").

3. Based on my personal knowledge and experience, I believe the Property is worth no more than $600,000.00.

4. I have a senior deed of trust with Specialized Loan Servicing, LLC., recorded on or about June 5, 2007, with a current balance of approximately $614,604.34. (Attached hereto and incorporated herein is a true and correct copy of the recent billing statement from Specialized Loan Servicing, LLC. showing the current balance as Exhibit "A" and Deed of Trust as Exhibit "C.").

5. I have a junior deed of trust with Wells Fargo Bank, N.A., recorded on or about July 31, 2007, with a current balance of approximately $87,041.44. (Attached hereto and incorporated herein is a true and correct copy of the recent payoff statement from Wells Fargo Bank, N.A. showing the current balance as Exhibit "B" and Deed of Trust as Exhibit "D.").

6. I have not made any payments on the second deed of trust since filing this case.

I declare under penalty of perjury under the laws of the State of California and United States that the foregoing is true and correct.

Executed on May 4, 2016, at Sherman Oaks, California.

/s/ Denny Tedesco_____
Denny Tedesco

**DECLARATION OF JENNIFER BOSCO SUPPORT OF MOTION TO AVOID JUNIOR LIEN ON PRINCIPAL RESIDENCE OF WELLS FARGO BANK, N.A.**

I, JENNIFER BOSCO, a licensed appraiser, do hereby declare that all of the following is true and correct to the best of my personal knowledge and if called upon as a witness I could and would competently testify to the truthfulness of all of the below statements.

1. I am making this declaration in support of the Motion to Avoid Junior Lien on Principal Residence of Wells Fargo Bank, N.A.

2. On or about April 16, 2016, I appraised real property located at 22640 Califa Street Woodland Hills, CA 91367 (hereinafter "Subject Property").

3. Pursuant to my appraisal, the value of the Subject Property on or about April 16, 2016, was valued at $600,000.00. (Attached hereto and incorporated herein as Exhibit "E" is a true and correct copy of my appraisal of the Subject Property.).

I declare under penalty of perjury under the laws of the State of California and United States that the foregoing is true and correct.

Executed on May 4, 2016, at Sherman Oaks, California.

_____
Jennifer Bosco

## Legal Description

 All that certain parcel of land situate in the City of Los Angeles, County of Los Angeles, State of California, being known and designated as follows:

The east 60 feet of Lot 33 of Tract 9528, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 135, Pages 51 and 54 of Maps, in the Office of the County Recorder of Los Angeles County, California.

Tax/Parcel ID: 2040-004-045

# EXHIBIT "A"

SLS

8742 Lucent Boulevard, Suite 300, Highlands Ranch, CO 80129

For more information about your account contact SLS at:
1-800-306-6062 or visit our website at www.sls.net.
SLS accepts calls from relay services on behalf of hearing impaired borrowers.

**Mortgage Statement**
Statement Date: 02/18/16

| Account Number | |
|---|---|
| Payment Due Date | 03/01/16 |
| **Total Amount Due ‡** | **$9,765.62** |

If payment is received after 03/15/16, $157.51 late fee will be charged.

1 0612765 000027191 9SPS1 0916845
SUZANNE TEDESCO
22640 CALIFA ST
WOODLAND HILLS CA 91367-4417

Property Address:
22640 CALIFA ST
WOODLAND HILLS    CA 91367

### Account Information

| | |
|---|---|
| Outstanding Principal | $604,838.72 |
| Escrow Balance | $0.00 |
| Partial Payment (Suspense)* | $0.00 |
| Deferred Principal | $0.00 |
| Deferred Interest | $0.00 |
| Other Deferred Amounts: | $0.00 |
| Interest Rate (Until 06/01/2017) | 6.250% |
| Prepayment Penalty | No |

### Explanation of Amount Due

| | |
|---|---|
| Principal | $0.00 |
| Interest | $3,150.20 |
| Escrow (for Taxes and Insurance) | $0.00 |
| Optional Product | $0.00 |
| Regular Monthly Payment | $3,150.20 |
| Total New Fees Charged | $157.51 |
| Past Due Amounts | $6,457.91 |
| Partial Payment (Suspense)* | $0.00 |
| **TOTAL AMOUNT DUE ‡** | **$9,765.62** |

### Transaction Activity (01/19/16 to 02/18/16)

| Date | Description | Total | Interest | Principal | Escrow (for Taxes and Insurance) | Optional Product | Fees/ Charges | Partial Payment (Suspense) |
|---|---|---|---|---|---|---|---|---|
| 02/17/16 | ACCRUED LATE CHARGE | 157.51 | 0.00 | 0.00 | 0.00 | 0.00 | 157.51 | 0.00 |

### Past Payments Breakdown

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes and Insurance) | $0.00 | $0.00 |
| Fees/Charges/Optional Product | $0.00 | $0.00 |
| Partial Payment (Suspense) | $0.00 | $0.00 |
| Total | $0.00 | $0.00 |

### Important Messages

You are currently due for the 01/01/16 payment.

* Partial Payments: Any partial payments that you make are not applied to your mortgage, but instead are held in a suspense account. If you pay the balance of a partial payment, the funds will then be applied to your mortgage. However, if the loan is in foreclosure, unless funds are received pursuant to an agreed upon loss mitigation program, any additional funds received will be returned to you.

‡ Amount to bring loan current: Please note, if your account is past due, this amount may not include all fees or other amounts necessary to fully reinstate your loan. Please contact SLS at 1-800-306-6059 for a full reinstatement quote.

### **Delinquency Notice**

**If You Are Experiencing Financial Difficulty:** You may contact the U.S. Department of Housing and Urban Development (HUD) for a list of homeownership counselors or counseling organizations in your area, call 1-800-569-4287 or go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm

You are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure - the loss of your home. As of February 18, 2016 you are 48 days delinquent on your mortgage loan.

Recent Account History

- Payment due 09/01/15: Fully paid on 09/13/15
- Payment due 10/01/15: Fully paid on 10/04/15
- Payment due 11/01/15: Fully paid on 10/25/15
- Payment due 12/01/15: Fully paid on 11/20/15
- Payment due 01/01/16: Amount Due $3,150.20
- Payment due 02/01/16: Amount Due $3,150.20
- 03/01/16: Current Payment Due $3,150.20
- Total Unpaid Fees, Charges, and Uncollected Escrow Amount: $315.02
- Total $9,765.62 due. You must pay this amount to bring your loan current.‡

---

**PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION AND DISCLOSURES.**

### MONTHLY PAYMENT NOTICE

Make checks payable to: Specialized Loan Servicing LLC

☐ Check if your address has changed and fill out form on reverse side, signature required.

SPECIALIZED LOAN SERVICING LLC
P O BOX 636007
LITTLETON, CO 80163-6007

LOAN NUMBER:
DATE: 02/18/16

22640 CALIFA ST
WOODLAND HILLS CA 91367

| Amount Due | | Due Date |
|---|---|---|
| Regular Monthly Payment | $3,150.20 | 03/01/16 |
| Past Due Amounts | $6,457.91 | |
| Total New Fees Charged | $157.51 | **TOTAL AMOUNT DUE ‡** |
| Partial Payment (Suspense) | $0.00 | $9,765.62 |

When sending more than the amount due, complete the following:

| | | |
|---|---|---|
| Principal Reduction | $ | **TOTAL AMOUNT ENCLOSED** |
| Other | $ | |
| Additional Escrow | $ | |

SPECIALIZED LOAN SERVICING LLC
P O BOX 105219
ATLANTA GA 30348-5219

# EXHIBIT "B"



# Account Statement
Statement Date: February 19, 2016
Page 1 of 5

52,489          (CO651)

```
DENNY TEDESCO
SUZANNE TEDESCO
22640 CALIFA ST
WOODLAND HILLS CA 91367-4417
```

---

## Customer Service

Telephone
**1-866-439-3557 (1-866-HE-WELLS)**
Español: **1-866-297-4535**

Online Banking
**www.wellsfargo.com**

Correspondence
**Wells Fargo Bank, N.A.**
**P.O. Box 10335**
**Des Moines, IA 50306**

Do not send payment to this address

## Payments

By mail
**Wells Fargo Bank, N.A.**
**PO Box 51172**
**Los Angeles, CA 90051-5472**

Overnight mail
**Wells Fargo Bank, N.A.**
**Attn:Payment Services**
**2324 Overland Ave**
**Billings, MT 59102-6401**

Principal only payments
**Wells Fargo Bank, N.A.**
**PO Box 51170**
**Los Angeles, CA 90051-5470**

---

## Smartfit Home Equity Account

Denny Tedesco
Suzanne Tedesco
**Account Number:** 651 1797159 1998

## Activity summary

| | |
|---|---|
| Approved line of credit | $86,900.00 |
| Credit in use: | |
| Line | $86,750.00 |
| Total credit in use | $86,750.00 |
| Available credit | $150.00 |
| Beginning balance owed** | $87,061.82 |
| Ending balance owed** | $87,041.44 |

*\*\* These balances include unpaid finance charges and other unpaid fees and charges.*
*The ending balance owed is not a payoff amount.  If you want to pay off and close*
*your Home Equity Line of Credit, please contact Customer Service for detailed payoff*
*instructions. Payoffs attempted in other ways may not close the account, resulting in a*
*delay of the release of your collateral.*




# EXHIBIT "C"

▲ **This page is part of your document - DO NOT DISCARD** ▲

 **20071352193** **Pages: 023**



Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

06/05/07 AT 08:00AM

Fee: 76.00
Tax: 0.00
Other: 0.00
_____
Total: 76.00

**Title Company**

# TITLE(S) :

▲    ▲

L E A D    S H E E T

**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.    **Number of AIN's Shown**

-            -

▲      **THIS FORM IS NOT TO BE DUPLICATED**  ▲

Recording Requested By.
G. HILL



06/05/07

**20071352193**

After Recording Return To·
~~~~~
Chicago Title
ServiceLink Division
4000 Industrial Blvd
Aliquippa, PA 15001

Prepared By:
JESSICA BRAVO

---

[Space Above This Line For Recording Data]

[Escrow/Closing #] | [Doc ID #]

# DEED OF TRUST

MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

(A) "Security Instrument" means this document, which is dated MAY 22, 2007    , together
with all Riders to this document.
(B) "Borrower" is
SUZANNE TEDESCO, AND DENNY JOSEPH TEDESCO, WIFE AND HUSBAND

---

**CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Page 1 of 16

 -8A(CA) (0207)    CHL (08/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291    **Form 3005  1/01**
CONV/VA

*3*

DOC ID #: ▮▮▮▮▮▮▮▮▮▮

Borrower's address is
22640 CALIFA STREET, WOODLAND HILLS, CA 91367-4417
Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
Countrywide Bank, FSB.
Lender is a FED SVGS BANK
organized and existing under the laws of THE UNITED STATES
Lender's address is
1199 North Fairfax St. Ste.500, Alexandria, VA 22314
**(D) "Trustee"** is
RECONTRUST COMPANY, N.A.
225 W HILLCREST DRIVE, MSN: TO-02, THOUSAND OAKS, CA 91360
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated  MAY 22, 2007      The Note states that Borrower owes Lender
SIX HUNDRED FIFTY THOUSAND and 00/100

Dollars (U.S. $ 650,000.00       ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   JUNE 01, 2037  .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider   [ ] Condominium Rider            [ ] Second Home Rider
[ ] Balloon Rider           [ ] Planned Unit Development Rider [ ] 1-4 Family Rider
[ ] VA Rider                [ ] Biweekly Payment Rider       [ ] Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

07 13521193

DOC ID #:

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of LOS ANGELES
[Type of Recording Jurisdiction]   [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number:                                            which currently has the address of
22640 CALIFA STREET, WOODLAND HILLS
[Street/City]

California 91367-4417 ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

VMP -6A(CA) (0207)      CHL (08/05)        Page 3 of 16          Form 3005 1/01

DOC ID #:

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note, (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

-6A(CA) (0207)      CHL (08/05)                Page 4 of 16                        Form 3005  1/01

DOC ID #: ▓▓▓▓▓▓▓▓

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.



DOC ID #: ▉▉▉▉▉▉▉

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

DOC ID #:

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

DOC ID #: ▮▮▮▮▮▮▮

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

DOC ID #:

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

DOC ID #:

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

DOC ID #: ▓▓▓▓▓▓

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

07 1352193

13

DOC ID #: _____

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

DOC ID #: ▇▇▇▇▇

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21. (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.



15

DOC ID #:

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

16

DOC ID #:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
SUZANNE TEDESCO                          -Borrower

_____ (Seal)
DENNY JOSEPH TEDESCO                     -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

07 1352193

VMP -6A(CA) (0207)        CHL (08/05)        Page 15 of 16        Form 3005 1/01

DOC ID #:

State of California
County of *LOS ANGELES*                                }  ss.

On *MAY 25, 2007* before me, *ELLIE ASHER, NOTARY PUBLIC*
                                                                personally appeared
*SUZANNE   TEDESCO   AND*
*DENNY JOSEPH TEDESCO*

_____ , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____  (Seal)

ELLIE ASHER
Commission # 1430737
Notary Public - California
Los Angeles County
My Comm. Expires Jul 15, 2007

18

Assessor's Parcel Number:

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.


MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
JESSICA BRAVO


Recording Requested By·

_____ [Space Above This Line For Recording Data] _____

# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

[Escrow/Closing #]          [Doc ID #]

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
1U796-XX (06/04)(d)          Page 1 of 5          Initials:




07 1352193

19

DOC ID #: ███████████

THIS FIXED/ADJUSTABLE RATE RIDER is made this TWENTY-SECOND      day of
MAY, 2007       , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
Countrywide Bank, FSB.

("Lender") of the same date and covering the property described in the Security Instrument and
located at:

22640 CALIFA STREET
WOODLAND HILLS, CA 91367-4417
[Property Address]
**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial fixed interest rate of      6.250 %. The Note also provides
for a change in the initial fixed rate to an adjustable interest rate, as follows:
**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The initial fixed interest rate I will pay will change to an adjustable interest rate on the
first       day of JUNE, 2017       , and the adjustable interest rate I will pay
may change on that day every 12th month thereafter. The date on which my initial fixed interest rate
changes to an adjustable interest rate, and each date on which my adjustable interest rate could
change, is called a "Change Date."
**(B) The Index**
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The
"Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the
London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure
available as of the date 45 days before each Change Date is called the "Current Index"
If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO & ONE-QUARTER          percentage points (      2.250 %) to the Current Index.
the Note Holder will then round the result of this addition to the nearest one-eighth of one percentage
point (0 125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new
interest rate until the next Change Date

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
1U796-XX (06/04)                Page 2 of 5                Initials _SEA_ DJT

07
1352143



DOC ID #: ████████████

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.250 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.250 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
   INTEREST ONLY
1U796-XX (06/04)           Page 3 of 5           Initials: ~~SJT~~ DJT

DOC ID #: ███████████

2  When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing

CONV
MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
1U796-XX (06/04)                    Page 4 of 5                    Initials: _SBT_ DST

07 1352193

DOC ID #: ███████████

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider

_____ (Seal)
SUZANNE TEDESCO                    -Borrower

_____ (Seal)
DENNY JOSEPH TEDESCO              -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

CONV
* MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
1U796-XX (06/04)                   Page 5 of 5



**Exhibit "A"**
**Legal Description**

All that certain parcel of land situate in the City of Los Angeles, County of Los Angeles, State of California, being known and designated as follows:

The east 60 feet of Lot 33 of Tract 9528, in the City of Los Angeles, County of Los Angeles, State of California, as per Map recorded in Book 135, Pages 51 and 54 of Maps, in the Office of the County Recorder of Los Angeles County, California.

Tax/Parcel ID: 2040-004-045

1396916

# EXHIBIT "D"



**This page is part of your document - DO NOT DISCARD**



# 20071807440

**Pages: 004**



**Recorded/Filed In Official Records
Recorder's Office, Los Angeles County,
California**

**07/31/07 AT 10:07AM**

Fee: 19.00
Tax: 0.00
Other: 0.00
_____
Total: 19.00

982730    200707310140038    Mail

## TITLE(S) :



L E A D    S H E E T

**Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.**

**Number of AIN's Shown**



**THIS FORM IS NOT TO BE DUPLICATED**

Recording requested by
Wells Fargo Bank, N.A.

When recorded return to
Wells Fargo Bank, N.A.
Attn: Document Mgt.
P.O. Box 31557
MAC B6955-015
Billings MT 59107-9900



07/31/07

20071807440

State of California
REFERENCE #: � ▒▒▒▒▒

Space Above This Line For Recording Data
Account number ▒▒▒▒▒

# SHORT FORM DEED OF TRUST
### (With Future Advance Clause)

1.  **DATE AND PARTIES.** The date of this Short Form Deed of Trust ("Security Instrument") is **JUNE 19, 2007** and the parties are as follows:

    TRUSTOR ("Grantor")   **DENNY JOSEPH TEDESCO AND SUZANNE TEDESCO, HUSBAND AND WIFE, AS JOINT TENANTS**

    whose address is:  **22640 CALIFA ST, WOODLAND HILLS, CALIFORNIA 91367-4417**

    TRUSTEE.  **American Securities Company, P.O. Box 31557, Billings, MT 59107**

    BENEFICIARY ("Lender")·  **Wells Fargo Bank, N.A., 101 North Phillips Avenue, Sioux Falls, SD 57104**

2.  **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale. all of that certain real property located in the County of **LOS ANGELES**, State of California, described as follows
    **THE EAST 60 FEET OF LOT 33 OF TRACT 9528, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 135, PAGES 51 AND 54 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY, CALIFORNIA.**

    with the address of **22640 CALIFA ST, LOS ANGELES, CALIFORNIA 91367** and parcel number of  **2040-004-045** together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above.

3.  **MAXIMUM OBLIGATION LIMIT AND SECURED DEBT.**  The total amount which this Security Instrument will secure shall not exceed **$ 100,000.00** together with all interest thereby accruing, as set forth in the promissory note, revolving line of credit agreement, contract, guaranty or other evidence of debt ("Secured Debt") of even date herewith, and all amendments, extensions, modifications, renewals or other documents which are incorporated by reference into this Security Instrument, now or in the future. The maturity date of the Secured Debt is **JUNE 19, 2047**

CADeed - short CDP.V2 (06/2005)                                    1/3
▐▌▐▌▐▌▐▌▐▌▐▌▐▌▐▌▐▌▐▌▐▌▐▌▐▌▐▌          Documents Processed 06-19-2007, 18 59 22

3

4. **FICTITIOUS DEED OF TRUST.** ˙By the delivery and execution of this Security Instrument, Grantor agrees that all provisions and sections of the Fictitious Deed of Trust, inclusive, dated **February 1, 1997**, and recorded on **February 06, 1997** as Instrument Number **97 200895** in Book **N/A** at Page **N/A** of the Official Records in the Office of the Recorder of **LOS ANGELES** County, State of California, are hereby incorporated into, and shall govern, this Security Instrument.

5. **RIDERS.** If checked, the following are applicable to this Security Instrument. The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument

| N/A | Third Party Rider

| N/A | Leasehold Rider

| N/A | Other:   N/A

**SIGNATURES:** By signing below, Grantor agrees to perform all covenants and duties as set forth in this Security Instrument. Grantor also acknowledges receipt of a copy of this document and a copy of the provisions contained in the previously recorded Fictitious Deed of Trust (the Deed of Trust-Bank/Customer Copy)    The undersigned Grantor requests that a copy of ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE hereunder be mailed to the Grantor's address given herein.

_____     6/23/07
Grantor  DENNY JOSEPH TEDESCO                         Date

_____     6/23/07
Grantor  SUZANNE TEDESCO                              Date

_____     _____
Grantor                                              Date

_____     _____
Grantor                                              Date

_____     _____
Grantor                                              Date

_____     _____
Grantor                                              Date

_____     _____
Grantor                                              Date

_____     _____
Grantor                                              Date

4

For An Individual Acting In His/Her Own Right.
State of California       )
                          ) ss.
County of _LOS ANGELES_ )

On _JUNE 23, 2007_ before me, _GREGORY MILNE_ Notary Public, personally appeared
_DENNY JOSEPH TEDESCO AND SUZANNE TEDESCO_
_____,

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) ~~is~~/are subscribed to the within instrument and acknowledged to me that ~~he/she~~/they executed the
same in ~~his/her~~/their authorized capacity(ies), and that by ~~his/her~~/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal

[NOTARIAL SEAL]

Signature

_GREGORY MILNE_
Print Name

```
GREGORY MILNE
Commission # 1608223
Notary Public - California
Los Angeles County
My Comm. Expires Oct 18, 2009
```

My commission expires: _10-18-09_

# EXHIBIT "E"

SunWest Appraisals Inc. (818) 610-1767

File # JBMS041616

# APPRAISAL OF REAL PROPERTY

**LOCATED AT**
22640 Califa St
Woodland Hills, CA 91367
TRACT NO 9528 E 60 FT OF LOT 33

**FOR**
Denny J and Suzanne Tedesco

**OPINION OF VALUE**
600,000

**AS OF**
4/16/2016

## TABLE OF CONTENTS

| | |
|---|---|
| Invoice | 1 |
| Supplemental Addendum w/sig block | 2 |
| Resume | 3 |
| License | 4 |
| GP Residential | 5 |
| Additional Comparables 4-6 | 8 |
| GP Residential Certifications Addendum | 9 |
| General Text Addendum | 11 |
| Plat Map | 14 |
| Location Map | 15 |
| Location Map | 16 |
| Subject Photos | 17 |
| Photograph Addendum | 18 |
| Photograph Addendum | 19 |
| Photograph Addendum | 20 |
| Comparable Photos 1-3 | 21 |
| Comparable Photos 4-6 | 22 |

## Supplemental Addendum

File No. JBMS041616

| | |
|---|---|
| Client | Denny and Suzanne Tedesco |
| Property Address | 22640 Califa St |
| City | Woodland Hills | County Los Angeles | State CA | Zip Code 91367 |
| Owner | Tedesco, Denny J & Suzanne |

### Declaration of Jennifer Bosco

I, Jennifer Bosco, hereby declare and state as follows:

1. I am over 18 years of age and a Certified Residential Appraiser with SunWest Appraisals, Inc. Except when based on information and belief, I make this declaration based on facts within my personal knowledge and if called as a witness, could and would testify thereto.

2. I am a duly qualified appraiser.  My California Office of Real Estate Appraisers license number is AR037417. Among other things, I am on the FHA Roster of approved residential appraisers,  I am qualified  and approved to do appraisals for FHA insured loans.

3. I completed an appraisal of the home owned by Denny J & Suzanne Tedesco located at 22640 Califa St, Woodland Hills, CA 91367.  A true and correct copy of the appraisal is attached hereto as Exhibit "A".

4. I have no present of contemplated interest in the real estate that  is the subject of this appraisal report and the fee I received is in no manner contingent upon the value reported.

5. I have no personal interest or bias with respect to the subject matter of the appraisal report, not do I have personal interest or bias with respect to the parties involved in the Motion for Order Valuating Property and Stripping Lien Under 11U.S.C.  506 & 1322(b)(2) and Bankruptcy Rule 3012, Among others, to which my declarations attached.

6. As set forth in the appraisal and incorporated by reference as if set forth in full herein, based on the degree of inspection of the subject property, as indicated therein, defined Scope of Work, Statement of Assumptions and Limiting Conditions, and Appraiser's Certifications, my Opinion of the Market Value, as defined therein, of the real property that is the subject of the appraisal is $600,000 as of April 16, 2016.

EXECUTED this 25th day of April, 2016, at Los Angeles County, California.

I declare under penalty of perjury  under the laws of the State of California that the foregoing is true and correct.

Jennifer Bosco

| | |
|---|---|
| Signature | Signature |
| Name Jennifer L. Bosco | Name |
| Date Signed 04/25/2016 | Date Signed |
| State Certification # AR037417 | State CA | State Certification # | State |
| Or State License # | State | Or State License # | State |

Form TADD2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Resume

# Jennifer Bosco

3011 Adornos Way , ◆ Burbank, CA 91504 ◆ (818) 613-1767 ◆ sunwestreports@gmail.com

### Professional Licenses

- ◆ Certified Residential Appraiser (AR 037417)
- ◆ California Real Estate Salesperson (01281552)
- ◆ FHA Approved

### Experience

#### CERTIFIED RESIDENTIAL APPRAISER                    (NOV 2004-PRESENT)

- ◆ Perform market valuations of single family residential and 2-4 residential properties.
- ◆ Supervise and manage a staff of 9 appraiser, training and review.
- ◆ Identify market values for complex, proposed and retrospective appraisals.
- ◆ Review valueations completed by other appraiser to confirm accuracy of analysis as risk prevention for wholesale and private lenders.

#### REALTOR                    (MAY 2000-2006)

- ◆ Assist buyers and sellers in the transfer of real property transactions.
  Duties included: detailed area analysis for available and suitable properties, market surveys to dermine market value, negotiate purchase agreements, coordinate transactions including: escorw, title and loan.

#### PROPERTY MANAGER                    (JAN 1998-2001)

- ◆ Oversaw leasing, marketing, rehabilitation as well as fiscal accounts of a residential income property.
- ◆ Increased marke rents by 34% thru salesman ship and cost reffective rehabilitation.
- ◆ Trained new manager.

### Approved Lender List

- ◆ Chase Bank NA
- ◆ Bank of America
- ◆ Augusta Financial.
- ◆ Pacific Bank
- ◆ Bank of Santa Clarita
- ◆ Flagstar
- ◆ Sunwest Bank

### Education and Certifications

- ◆ UNIVERSITY OF SOUTHERN CALIFORNIA – LOS ANGELES, CA
  **Bachelor of Arts-Political Science 1998**

**License**



Business, Consumer Services & Housing Agency

## BUREAU OF REAL ESTATE APPRAISERS
## REAL ESTATE APPRAISER LICENSE

### Jennifer L. Bosco

has successfully met the requirements for a license as a residential real estate appraiser in the State of
California and is, therefore, entitled to use the title:

"Certified Residential Real Estate Appraiser"

This license has been issued in accordance with the provisions of the Real Estate Appraisers' Licensing and
Certification Law.

BREA APPRAISER IDENTIFICATION NUMBER:    AR 037417

Effective Date:    June 8, 2015
Date Expires,    June 7, 2017

Jim Martin, Bureau Chief, BREA

3021436

# RESIDENTIAL APPRAISAL SUMMARY REPORT

File No.: JBM3041616

## SUBJECT

Property Address: 22640 Califa St | City: Woodland Hills | State: CA | Zip Code: 91367
County: Los Angeles | Legal Description: TRACT NO 9528 E 60 FT OF LOT 33
Assessor's Parcel #: 2040-004-045
Tax Year: 2015 | R.E. Taxes: $ 6,068 | Special Assessments: $ None | Borrower (if applicable): None
Current Owner of Record: Tedesco, Denny J & Suzanne | Occupant: ☒ Owner ☐ Tenant ☐ Vacant ☐ Manufactured Housing
Project Type: ☐ PUD ☐ Condominium ☐ Cooperative ☒ Other (describe) Single Family Residence HOA: $ None ☐ per year ☐ per month
Market Area Name: Woodland Hills | Map Reference: 559/H1 | Census Tract: 1372.01

## ASSIGNMENT

The purpose of this appraisal is to develop an opinion of: ☒ Market Value (as defined), or ☐ other type of value (describe)
This report reflects the following value (if not Current, see comments): ☒ Current (the Inspection Date is the Effective Date) ☐ Retrospective ☐ Prospective
Approaches developed for this appraisal: ☒ Sales Comparison Approach ☐ Cost Approach ☐ Income Approach (See Reconciliation Comments and Scope of Work)
Property Rights Appraised: ☒ Fee Simple ☐ Leasehold ☐ Leased Fee ☐ Other (describe)
Intended Use: The appraisal report is to be used in estate planning.

Intended User(s) (by name or type): Denny and Suzanne Tedesco
Client: Denny and Suzanne Tedesco | Address: On File
Appraiser: Jennifer L. Bosco | Address: On File

## MARKET AREA DESCRIPTION

| Location: ☐ Urban ☒ Suburban ☐ Rural | Predominant Occupancy | One-Unit Housing | | Present Land Use | Change in Land Use |
|---|---|---|---|---|---|
| Built up: ☒ Over 75% ☐ 25-75% ☐ Under 25% | | PRICE $(000) | AGE (yrs) | One-Unit 96 % | ☒ Not Likely |
| Growth rate: ☐ Rapid ☒ Stable ☐ Slow | ☒ Owner 80 | | | 2-4 Unit 1 % | ☐ Likely * ☐ In Process * |
| Property values: ☐ Increasing ☒ Stable ☒ Declining | ☐ Tenant 15 | 500 Low 35 | | Multi-Unit 2 % | * To: |
| Demand/supply: ☐ Shortage ☒ In Balance ☐ Over Supply | ☒ Vacant (0-5%) | 800 High 68 | | Comm'l 1 % | |
| Marketing time: ☐ Under 3 Mos. ☒ 3-6 Mos. ☐ Over 6 Mos. | ☐ Vacant (>5%) | 700 Pred 59 | | % | |

Market Area Boundaries, Description, and Market Conditions (including support for the above characteristics and trends): Market conditions are considered declining with an average to low supply and demand for residential properties. Marketing times are typically less than 180 days. Conventional financing is prevalent and readily available at nominal rates. Seller may pay a portion of a buyer's non-recurring closing costs. The subject area is comprised of single family dwellings built predominately from 1940-1970. Dwellings vary in age, style, condition and site size. Commercial and multi-residential properties are situated along major thoroughfares. There is good access to support services, schools and employment.

## SITE DESCRIPTION

Dimensions: 60.0' x 252.02' | Site Area: 15,121 Sq.Ft.
Zoning Classification: LAR1 | Description: Single Family Residential
Zoning Compliance: ☒ Legal ☐ Legal nonconforming (grandfathered) ☐ Illegal ☐ No zoning
Are CC&Rs applicable? ☐ Yes ☒ No ☐ Unknown Have the documents been reviewed? ☐ Yes ☒ No Ground Rent (if applicable) $ /
Highest & Best Use as improved: ☒ Present use, or ☐ Other use (explain)
The subject is considered to be a legal conforming use and the subject's current use as a single family dwelling is it's highest and best use.
Actual Use as of Effective Date: Single Family Residential Use as appraised in this report: Single Family Residence
Summary of Highest & Best Use: Highest and best use considered to be single family residential.

| Utilities | Public | Other | Provider/Description | Off-site Improvements | Type | Public | Private | Topography | Level/Avg |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | City/ Average | Street | Asphalt/Avg | ☒ | ☐ | Size | Average |
| Gas | ☒ | ☐ | City/ Average | Curb/Gutter | Concrete/Avg | ☒ | ☐ | Shape | Rectangular/Avg |
| Water | ☒ | ☐ | City/ Average | Sidewalk | None/Typ for Market | ☒ | ☐ | Drainage | Average |
| Sanitary Sewer | ☒ | ☐ | City/ Average | Street Lights | City/Average | ☒ | ☐ | View | Residential/Avg |
| Storm Sewer | ☒ | ☐ | City/ Average | Alley | None | ☐ | ☐ | | |

Other site elements: ☒ Inside Lot ☐ Corner Lot ☐ Cul de Sac ☐ Underground Utilities ☐ Other (describe)
FEMA Spec'l Flood Hazard Area ☐ Yes ☒ No FEMA Flood Zone X FEMA Map # 06037C1290F FEMA Map Date 09/26/2008
Site Comments: There were no apparent adverse easements, encroachment or other adverse conditions noted at the time of the inspection. Further there were no obvious environmental hazards present in the improvements, on the site, or in the vicinity of the subject. For properties constructed before 1978 asbestos or lead paint could possibly be an issue. However, no adverse environmental conditions were observed at the time of the inspection.

## DESCRIPTION OF THE IMPROVEMENTS

| General Description | Exterior Description | | Foundation | | Basement | ☒ None | Heating | Yes/Average |
|---|---|---|---|---|---|---|---|---|
| # of Units 1 ☐ Acc.Unit | Foundation | Concrete/Avg | Slab | Concrete/Avg | Area Sq. Ft. | | Type | Central |
| # of Stories 2 | Exterior Walls | Stucco/Siding/Avg | Crawl Space | Yes/Avg | % Finished | | Fuel | Gas |
| Type ☒ Det. ☐ Att. ☐ | Roof Surface | Composition Shin | Basement | None Noted | Ceiling | | | |
| Design (Style) Traditional/Avg | Gutters & Dwnspts. | Yes/Alum/Avg | Sump Pump | ☐ None | Walls | | Cooling | Yes/Average |
| ☒ Existing ☐ Proposed ☐ Und Cons. | Window Type | Various/Avg | Dampness | ☐ None | Floor | | Central | Central |
| Actual Age (Yrs.) 58 | Storm/Screens | Yes | Settlement | None Noted | Outside Entry | | Other | |
| Effective Age (Yrs.) 15 | | | Infestation | None Noted | | | | |

| Interior Description | | Appliances | | Attic ☐ None | Amenities | | Car Storage | ☐ None |
|---|---|---|---|---|---|---|---|---|
| Floors | Various/Avg | Refrigerator | ☒ | Stairs | Fireplace(s) # 2 | Woodstove(s) # 0 | Garage # of cars ( 2 Tot.) | |
| Walls | Drywall/Paint/Wall/Avg | Range/Oven | ☒ | Drop Stair | Patio Patio/Cov'd/Avg | | Attach. | |
| Trim/Finish | Wd/Avg | Disposal | ☒ | Scuttle | ☒ Deck None | | Detach. | |
| Bath Floor | Tile/Avg | Dishwasher | ☒ | Doorway | Porch None | | Bit.-In | |
| Bath Wainscot | Tile/Avg | Fan/Hood | ☐ | Floor | Fence Wood/Avg | | Carport | |
| Doors | Wd/Avg | Microwave | ☐ | Heated | Pool Private/Avg | | Driveway 2 Cars | |
| | | Washer/Dryer | ☒ | Finished | Spa Private/Avg | | Surface | |

Finished area above grade contains: 8 Rooms 3 Bedrooms 3 Bath(s) 2,096 Square Feet of Gross Living Area Above Grade
Additional features: The energy efficient items are typical for the market area of the subject.

Describe the condition of the property (including physical, functional and external obsolescence):
The subject is in generally average to good condition. No internal inadequacies or external adversities noted.

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

**GP RESIDENTIAL**

Form GPRES2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

3/2007

# RESIDENTIAL APPRAISAL SUMMARY REPORT

File No.: JBMS041616

**TRANSFER HISTORY**

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s): NDC Data Source

| 1st Prior Subject Sale/Transfer | Analysis of sale/transfer history and/or any current agreement of sale/listing: Subject does not have a prior listing, sale |
|---|---|
| Date: No Prior Sale | or transfer in the last 36 months. Comparables do not have a prior sale history in the last 12 months. |
| Price: In The Last 36 Months | |
| Source(s) NDC Datasource | |
| 2nd Prior Subject Sale/Transfer | |
| Date: No Prior Sale | |
| Price: In The Last 36 Months | |
| Source(s): NDC Datasource | |

| SALES COMPARISON APPROACH TO VALUE (if developed) | | ☐ The Sales Comparison Approach was not developed for this appraisal. |

**SALES COMPARISON APPROACH**

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | +(-) $ Adjust. | COMPARABLE SALE # 2 | +(-) $ Adjust. | COMPARABLE SALE # 3 | +(-) $ Adjust. |
|---|---|---|---|---|---|---|---|
| Address | 22640 Califa St | 22301 Welby Way | | 22732 Hamlin St | | 22718 Haynes St | |
| | Woodland Hills, CA 91367 | Woodland Hills, CA 91303 | | West Hills, CA 91307 | | West Hills, CA 91307 | |
| Proximity to Subject | | 1.20 miles NE | | 0.82 miles N | | 0.88 miles N | |
| Sale Price | $ 0 | $ 615,000 | | $ 575,000 | | $ 550,000 | |
| Sale Price/GLA | $ /sq.ft. | $ 356.32 /sq.ft. | | $ 346.18 /sq.ft. | | $ 273.77 /sq.ft. | |
| Data Source(s) | NDC/MLS | Doc#158697 / MLS#SR15267515 | | Doc#1493809 / MLS#215015065 | | Doc# 263690 / MLS#SR16028214 | |
| Verification Source(s) | Inspection | Local Realtors | | Local Realtors | | Local Realtors | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing | None | Cnv/None Noted | | Cnv/$12,000NRCC | -12,000 | Cash/None Noted | |
| Concessions | None | Dom: 16 | | Dom:48 | | Dom:19 | |
| Date of Sale/Time | Estate Planning | 2/12/2016 | | 12/1/2015 | | 3/10/2016 | |
| Rights Appraised | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Location | Suburban/Avg | Suburban/Avg | | Suburban/Avg | | Suburban/Avg | |
| Site | 15,121 Sq.Ft. | 7,510 sf | +8,000 | 7,919 sf | +7,000 | 7,919 sf | +7,000 |
| View | Residential/Avg | Residential/Avg | | Residential/Avg | | Residential/Avg | |
| Design (Style) | Traditional/Avg | Traditional/Avg | | Traditional/Avg | | Contemporary/Avg | 0 |
| Quality of Construction | Average | Average | | Average | | Average | 0 |
| Age | 58 | 38 | 0 | 60 | 0 | 59 | 0 |
| Condition | Average | Average | | Average | | Average | |
| Above Grade | Total 9 / Bdrms 3 / Baths 3 | Total 9 / Bdrms 3 / Baths 2.1 | +3,000 | Total 6 / Bdrms 4 / Baths 2 | -2,000 | Total 6 / Bdrms 4 / Baths 2 | -2,000 |
| Room Count | | | | | | | |
| Gross Living Area | 2,096 sq.ft. | 1,726 sq.ft. | +19,000 | 1,661 sq.ft. | +22,000 | 2,009 sq.ft. | 0 |
| Basement & Finished | None | None | | None | | None | |
| Rooms Below Grade | None | None | | None | | None | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA/CAC | FWA/CAC | | FWA/CAC | | FWA/CAC | |
| Energy Efficient Items | Typ for Area | Typ for Area/Solar | -15,000 | Typ for Area | | Typ for Area | |
| Garage/Carport | 2 Car Attached | 2 Car Attached | | 2 Car Attached | | 2 Car Built-In | |
| Porch/Patio/Deck | Cov'd Patio | Patio | 0 | Patio | 0 | Patio | |
| Amenities/Pool & Spa | Pool & Spa | Pool & Spa | | None | +10,000 | None | +10,000 |
| | | | | | | | |
| APN | 2040-004-045 | 2139-009-052 | 0 | 2038-022-002 | 0 | 2038-022-015 | 0 |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 15,000 | ☒ + ☐ - | $ 25,000 | ☒ + ☐ - | $ 15,000 |
| Adjusted Sale Price | | | | | | | |
| of Comparables | | | $ 630,000 | | $ 600,000 | | $ 565,000 |

Summary of Sales Comparison Approach    The comparables are all recent verified sales from the immediate market area. The sales are similar in style, overall condition, quality and appeal. The sales bracket the subject's GLA, site size and basic utility.The adjusted sales range is $565,000 - $630,000. More weight given to standard sales and active listing evenly weighted with closed sales.

Final Estimated Value: $600,000

THE ESTIMATED EXPOSURE TIME IS 45-120 DAYS.

THE APPRAISER HAS NOT APPRAISED THE SUBJECT PROPERTY IN THE PREVIOUS 36 MONTHS.

Appraisal Parameters and Methods: A six month market search was conducted within the subject's neighborhood and similar competing neighborhood(s) for comparable sales, pending sales and properties currently listed for sale. May properties were reviewed. To the best of the appraiser's knowledge, the Comparable presented and utilized in this report represent the most relevant data appropriate for the analysis and valuation of the subject property. The comparable section and valuation analysis is governed by the principle of substitution; a buyer will not pay more for one property than for another that is equally desirable. When determinable, adjustments for significant differences in improvements were derived by matched paired analysis or abstraction. When matched pair analysis or abstraction were not possible or practical, bracketing and/or the appraiser's knowledge and experience in the market area are utilized in determining the appropriate adjustment for differences. Comparable sales were confirmed closed per the information data sources cited in the "scope of the Appraisal." In the case of discrepancies among data sources the appraisers placed more weight on the MLS data for descriptive information and NDC or Public Records for recording data.

Indicated Value by Sales Comparison Approach $    600,000

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc must be acknowledged and credited

**GP RESIDENTIAL**    Form GPRES2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE    3/2007

## RESIDENTIAL APPRAISAL SUMMARY REPORT

File No.: JBMS041616

**COST APPROACH TO VALUE (if developed)** ☒ The Cost Approach was not developed for this appraisal.

Provide adequate information for replication of the following cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value):

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | = $ |
|---|---|---|---|
| Source of cost data: | DWELLING | Sq.Ft. @ $ | ..... = $ |
| Quality rating from cost service: | Effective date of cost data: | Sq.Ft. @ $ | ..... = $ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.): | | Sq.Ft. @ $ | ..... = $ |
| | | Sq.Ft. @ $ | ..... = $ |
| | | Sq.Ft. @ $ | ..... = $ |
| | | | ..... = $ |
| | Garage/Carport | Sq.Ft. @ $ | ..... = $ |
| | Total Estimate of Cost-New | | ..... = $ |
| | Less     Physical | Functional | External |
| | Depreciation | | = $( ) |
| | Depreciated Cost of Improvements | | ..... = $ |
| | "As-is" Value of Site Improvements | | ..... = $ |
| | | | ..... = $ |
| Estimated Remaining Economic Life (if required): | Years | INDICATED VALUE BY COST APPROACH | ..... = $ |

**INCOME APPROACH TO VALUE (if developed)** ☒ The Income Approach was not developed for this appraisal.

| Estimated Monthly Market Rent $ | X Gross Rent Multiplier | = $ | Indicated Value by Income Approach |
|---|---|---|---|

Summary of Income Approach (including support for market rent and GRM):

N/A

**PROJECT INFORMATION FOR PUDs (if applicable)** ☐ The Subject is part of a Planned Unit Development.

Legal Name of Project:

Describe common elements and recreational facilities:

| Indicated Value by: Sales Comparison Approach $ | 600,000 | Cost Approach (if developed) $ | NA | Income Approach (if developed) $ | |
|---|---|---|---|---|---|

Final Reconciliation  The Sales Comparison approach was solely weighted in determining the final estimate of value, as it best represents typical buyer's and sellers. The Cost approach was not considered due to the subject's age and location in a fully developed locale. The Income approach was not considered applicable because SFR's in the subject's area are typically purchases for owner use and not income generation.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a Hypothetical Condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a Hypothetical Condition that the repairs or alterations have been completed, ☐ subject to the following required inspection based on the Extraordinary Assumption that the condition or deficiency does not require alteration or repair:

☒ This report is also subject to other Hypothetical Conditions and/or Extraordinary Assumptions as specified in the attached addenda.

Based on the degree of inspection of the subject property, as indicated below, defined Scope of Work, Statement of Assumptions and Limiting Conditions, and Appraiser's Certifications, my (our) Opinion of the Market Value (or other specified value type), as defined herein, of the real property that is the subject of this report is: $     600,000     , as of:     4/16/2016     , which is the effective date of this appraisal. If indicated above, this Opinion of Value is subject to Hypothetical Conditions and/or Extraordinary Assumptions included in this report.  See attached addenda.

A true and complete copy of this report contains    22    pages, including exhibits which are considered an integral part of the report. This appraisal report may not be properly understood without reference to the information contained in the complete report.

Attached Exhibits:

| ☒ Scope of Work | ☒ Limiting Cond./Certifications | ☐ Narrative Addendum | ☒ Photograph Addenda | ☐ Sketch Addendum |
|---|---|---|---|---|
| ☒ Map Addenda | ☒ Additional Sales | ☐ Cost Addendum | ☐ Flood Addendum | ☐ Manuf. House Addendum |
| ☒ Hypothetical Conditions | ☒ Extraordinary Assumptions | ☒ Plat Map | ☒ Location Map | ☒ Declaration/Resume |

| Client Contact: | | Client Name: | Denny and Suzanne Tedesco |
|---|---|---|---|
| E-Mail: wreckingcrewfilm.com | | Address: On File | |

| APPRAISER | SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable) |
|---|---|
| Appraiser Name:  Jennifer L. Bosco | Supervisory or Co-Appraiser Name: |
| Company:  SunWest Appraisals, Inc | Company: |
| Phone: (818) 522-3449     Fax: | Phone:     Fax: |
| E-Mail:  sunwestreports@gmail.com | E-Mail: |
| Date of Report (Signature):  04/25/2016 | Date of Report (Signature): |
| License or Certification #:  AR037417     State: CA | License or Certification #:     State: |
| Designation: | Designation: |
| Expiration Date of License or Certification:  06/07/2017 | Expiration Date of License or Certification: |
| Inspection of Subject: ☒ Interior & Exterior ☐ Exterior Only ☐ None | Inspection of Subject: ☐ Interior & Exterior ☐ Exterior Only ☐ None |
| Date of Inspection:  4/16/2016 | Date of Inspection: |

Copyright 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

**GP RESIDENTIAL**     Form GPRES2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE     3/2007

## ADDITIONAL COMPARABLE SALES

File No.: JBMS041616

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 22640 Califa St | 5610 Fallbrook Ave | | 6124 Fallbrook Ave | | 22738 Burbank Blvd | |
| | Woodland Hills, CA 91367 | Woodland Hills, CA 91367 | | Woodland Hills, CA 91367 | | Woodland Hills, CA 91367 | |
| Proximity to Subject | | 0.36 miles SW | | 0.37 miles NW | | 0.39 miles SW | |
| Sale Price | $ 0 | | $ 550,000 | | $ 575,000 | | $ 579,000 |
| Sale Price/GLA | $ /sq.ft. | $ 359.01 /sq.ft. | | $ 360.28 /sq.ft. | | $ 339.79 /sq.ft. | |
| Data Source(s) | NDC/MLS | Doc#103240 / MLS#DW15234675 | | Backup/Active/MLS#SR16064609 | | Pending/MLS#SR15257938 | |
| Verification Source(s) | Inspection | Local Realtors | | Local Realtors | | Local Realtors | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing | None | Cnv/$10,000 NRCC | -10,000 | Cnv/None Noted | | Cnv/None Noted | |
| Concessions | None | Dom:93 | | Dom:26 | | Dom:112 | |
| Date of Sale/Time | Estate Planning | 1/29/2016 | | Active Listing | -10,000 | Pending | -10,000 |
| Rights Appraised | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Location | Suburban/Avg | Suburban/Busy St | +10,000 | Suburban/Busy St | +10,000 | Suburban/Busy Rd | +10,000 |
| Site | 15,121 Sq.Ft. | 7,137 sf | +8,000 | 8,114 sf | +7,000 | 6,748 sf | +8,000 |
| View | Residential/Avg | Residential/Avg | | Residential/Avg | | Residential/Avg | |
| Design (Style) | Traditional/Avg | Traditional/Avg | | Traditional/Avg | | Traditional/Avg | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Age | 58 | 62 | 0 | 68 | 0 | 63 | 0 |
| Condition | Average | Average | | Average | | Average | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 9  3  3 | 8  4  2 | -2,000 | 8  3  2 | +6,000 | 8  3  2 | +6,000 |
| Gross Living Area | 2,096 sq.ft. | 1,532 sq.ft. | +28,000 | 1,596 sq.ft. | +25,000 | 1,704 sq.ft. | +20,000 |
| Basement & Finished | None | None | | None | | None | |
| Rooms Below Grade | None | None | | None | | None | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA/CAC | FWA/CAC | | FWA/CAC | | FWA/CAC | |
| Energy Efficient Items | Typ for Area | Typ for Area | | Typ for Area | | Typ for Area | |
| Garage/Carport | 2 Car Attached | 2 Car Attached | | 1 Car Detached | +2,000 | 2 Car Attached | |
| Porch/Patio/Deck | Cov'd Patio | Cov'd Patio | | Patio | 0 | Patio | 0 |
| Amenities/Pool & Spa | Pool & Spa | Pool | +5,000 | Pool | +5,000 | None | +10,000 |
| APN | 2040-004-045 | 2040-011-007 | | 2039-018-035 | | 2040-012-019 | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 39,000 | ☒ + ☐ - | $ 45,000 | ☒ + ☐ - | $ 44,000 |
| Adjusted Sale Price | | | | | | | |
| of Comparables | | | $ 589,000 | | $ 620,000 | | $ 623,000 |
| Summary of Sales Comparison Approach | See page 2. | | | | | | |

*(left margin, vertical)* SALES COMPARISON APPROACH

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

GP RESIDENTIAL

Form GPRES2.(AC) - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

3/2007

## Assumptions, Limiting Conditions & Scope of Work

File No.:  JBMS041616

| Property Address: | 22640 Califa St | | City: Woodland Hills | State: CA | Zip Code: 91367 |
|---|---|---|---|---|---|
| Client: | Denny and Suzanne Tedesco | | Address: On File | | |
| Appraiser: | Jennifer L. Bosco | | Address: On File | | |

**STATEMENT OF ASSUMPTIONS & LIMITING CONDITIONS**

- The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

- The appraiser may have provided a sketch in the appraisal report to show approximate dimensions of the improvements, and any such sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size. Unless otherwise indicated, a Land Survey was not performed.

- If so indicated, the appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

- The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

- If the cost approach is included in this appraisal, the appraiser has estimated the value of the land in the cost approach at its highest and best use, and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used. Unless otherwise specifically indicated, the cost approach value is not an insurance value, and should not be used as such.

- The appraiser has noted in the appraisal report any adverse conditions (including, but not limited to, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property, or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property, or adverse environmental conditions (including, but not limited to, the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist.  Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

- The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

- The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice, and any applicable federal, state or local laws.

- If this appraisal is indicated as subject to satisfactory completion, repairs, or alterations, the appraiser has based his or her appraisal report and valuation conclusion on the assumption that completion of the improvements will be performed in a workmanlike manner.

- An appraiser's client is the party (or parties) who engage an appraiser in a specific assignment. Any other party acquiring this report from the client does not become a party to the appraiser-client relationship. Any persons receiving this appraisal report because of disclosure requirements applicable to the appraiser's client do not become intended users of this report unless specifically identified by the client at the time of the assignment.

- The appraiser's written consent and approval must be obtained before this appraisal report can be conveyed by anyone to the public, through advertising, public relations, news, sales, or by means of any other media, or by its inclusion in a private or public database.

- An appraisal of real property is not a 'home inspection' and should not be construed as such. As part of the valuation process, the appraiser performs a non-invasive visual inventory that is not intended to reveal defects or detrimental conditions that are not readily apparent. The presence of such conditions or defects could adversely affect the appraiser's opinion of value. Clients with concerns about such potential negative factors are encouraged to engage the appropriate type of expert to investigate.

The Scope of Work is the type and extent of research and analyses performed in an appraisal assignment that is required to produce credible assignment results, given the nature of the appraisal problem, the specific requirements of the intended user(s) and the intended use of the appraisal report. Reliance upon this report, regardless of how acquired, by any party or for any use, other than those specified in this report by the Appraiser, is prohibited. The Opinion of Value that is the conclusion of this report is credible only within the context of the Scope of Work, Effective Date, the Date of Report, the Intended User(s), the Intended Use, the stated Assumptions and Limiting Conditions, any Hypothetical Conditions and/or Extraordinary Assumptions, and the Type of Value, as defined herein. The appraiser, appraisal firm, and related parties assume no obligation, liability, or accountability, and will not be responsible for any unauthorized use of this report or its conclusions.

Additional Comments (Scope of Work, Extraordinary Assumptions, Hypothetical Conditions, etc.):THE GLA WAS DERIVED FROM THIRD PARTY SOURCES DEEMED RELIABLE.  IF DETERMINED NOT TO BE ACCURATE THE APPRAISER RESERVES THE RIGHT TO AMEND THE REPORT ACCORDINGLY.   The appraiser has not performed an valuation on the subject in the previous 36 months.

## Certifications

File No.:  JBMS041616

| Property Address: | 22640 Califa St | | City: Woodland Hills | State: CA | Zip Code: 91367 |
| --- | --- | --- | --- | --- | --- |
| Client: | Denny and Suzanne Tedesco | Address: | On File | | |
| Appraiser: | Jennifer L. Bosco | Address: | On File | | |

### APPRAISER'S CERTIFICATION

I certify that, to the best of my knowledge and belief:
- The statements of fact contained in this report are true and correct.
- The credibility of this report, for the stated use by the stated user(s), of the reported analyses, opinions, and conclusions are limited only by
the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
- I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction
in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
- I did not base, either partially or completely, my analysis and/or the opinion of value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property, or of the present owners or occupants of the properties in the vicinity of the subject property.
- Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
- Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification.

**Additional Certifications:**

### DEFINITION OF MARKET VALUE *:

Market value means the most probable price which a property should bring in a competitive and open market under all conditions requisite
to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions
whereby:
1. Buyer and seller are typically motivated;
2. Both parties are well informed or well advised and acting in what they consider their own best interests;
3. A reasonable time is allowed for exposure in the open market;
4. Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and
5. The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.
* This definition is from regulations published by federal regulatory agencies pursuant to Title XI of the Financial Institutions  Reform, Re

| Client Contact: | | Client Name: | Denny and Suzanne Tedesco |
| --- | --- | --- | --- |
| E-Mail: wreckingcrewfilm.com | Address: | On File | |

| APPRAISER | SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable) |
| --- | --- |
| Appraiser Name: Jennifer L. Bosco | Supervisory or Co-Appraiser Name: |
| Company: SunWest Appraisals, Inc | Company: |
| Phone: (818) 322-3449   Fax: | Phone:   Fax: |
| E-Mail: sunwestreports@gmail.com | E-Mail: |
| Date Report Signed: 04/25/2016 | Date Report Signed: |
| License or Certification #: AR037417   State: CA | License or Certification #:   State: |
| Designation: | Designation: |
| Expiration Date of License or Certification: 06/07/2017 | Expiration Date of License or Certification: |
| Inspection of Subject: ☒ Interior & Exterior  ☐ Exterior Only  ☐ None | Inspection of Subject: ☐ Interior & Exterior  ☐ Exterior Only  ☐ None |
| Date of Inspection: 4/16/2016 | Date of Inspection: |

**GP**RESIDENTIAL

Copyright© 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited
Form GPRES2AD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

3/2007

## Supplemental Addendum

File No. JBMS041616

| Client | Denny and Suzanne Tedesco | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 22640 Califa St | | | | | | |
| City | Woodland Hills | County | Los Angeles | State | CA | Zip Code | 91367 |
| Owner | Tedesco, Denny J & Suzanne | | | | | | |

### Neighborhood Description:

The subject is located in the Woodland Hills area, and is comprised of single family dwellings built predominately from 1940-1970. Dwellings vary in age, style, condition and site size. Commercial and multi-residential properties are situated along major thoroughfares. There is good access to support services, schools and employment.

### Site Information:

No adverse easements (normal Public Utility Easements exist), encroachment or other condition were noted. No soil subsidence or other visible problems were evident, including adverse environmental conditions. However, it should be noted that appraiser is not a qualified expert in these fields and can not render a professional opinion on same, no warranties implied.

### Comments On Improvements:

No updates in the prior 2 years; The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained. Improvements are of average size and typical for the area. Quality of construction is average, having a composition roof cover, drywall interior walls, crawl space foundation and double pane windows.

Some signs of damage and/or need for repairs. No physical, functional or external obsolescence noted.

Noted signs of damage to the exterior with chipped and peeling paint at the garage and the asphalt driveway with cracks, chipping and erosion.

Functional utility is acceptable, with adequately sized rooms, ample closet space and an efficient layout. Property generally conforms with the neighborhood.

### Subject Description:

Subject features living room with wood beam ceiling and fireplace. Kitchen with quartz counters, tile backsplash and center island, adjacent dining area with fireplace. Master bedroom with private bathroom, secondary bedrooms with closets, secondary baths with vanity and tile shower wainscoting. Detached garage, pool and spa amenity.

### Comments on Comparables:

Located on 22301 Welby Way is weighted the heaviest due to requiring the least amount of adjustments. Comparable is located within subject's neighborhood and is a recently closed sale from February. Comparable features the same bedroom count, countered with a bracketing smaller bathroom count. Comparable with an upgraded interior and exterior condition, bracketing smaller gross living area and site square footage. Pool and spa amenity, countered with solar panels that are owned, not leased.

Located on 22732 Hamlin St is a supporting comparable due to its close proximity to the subject, and a relatively recent closed sale from December. Comparable with a bracketing additional bedroom count, countered with a smaller bracketing bathroom count. Comparable with a bracketing smaller gross living and site square footage, similar updated interior condition, countered without the pool amenity.

Located on 22718 Haynes St is an additional supporting comparable due to its recently closed sale date from March, and located within subject's neighborhood. Comparable features a bracketing larger bedroom count, countered with a smaller bracketing bathroom count. Comparable with a similar gross living area square footage and bracketing smaller site square footage. Comparable with an upgraded interior condition, countered without the pool and spa amenity.

Located on 5610 Fallbrook Ave is weighted the least, but a supporting comparable due to its recently closed sale date from January, and its location within subject's neighborhood, countered with its location on a busier street. Comparable features an updated interior and exterior condition, bracketing larger bedroom and bathroom count, and features the pool amenity, countered without a spa.

Located on 6124 Fallbrook Ave is an Active listing within subject's neighborhood, features the same bedroom count as subject, countered with a smaller bathroom count, gross living area and site square footage. Comparable with an updated interior and exterior condition and pool amenity, countered with its location on a busier street.

Located on 22738 Burbank Bl is a Pending sale within subject's neighborhood, features the same bedroom count as subject, countered with a smaller bathroom count, gross living area and site square footage. Comparable with an upgraded interior and exterior condition, countered with its location on a busier street and no pool and spa amenity.

## Supplemental Addendum

File No. JBMS041616

| Client | Denny and Suzanne Tedesco | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 22640 Califa St | | | | | | |
| City | Woodland Hills | County | Los Angeles | State | CA | Zip Code | 91367 |
| Owner | Tedesco, Denny J & Suzanne | | | | | | |

**Comments on Comparables Selection:**
Comparables were researched within subject's immediate and surrounding neighborhood for similar competing properties within the subject market. Comparables were weighted for condition with a range of upgrades from original well maintained to upgraded. Comparables provided a range of bedroom and bathroom counts, no pool, pool and pool and spa amenities. Comparables are considered the best examples of competing properties within the subject neighborhood and are considered the best available to support a final value estimation.

**Sales Comparison:**
The market adjustments are based upon the market, and as such, may differ from actual costs. All the chosen comparables are considered to be competing properties within subject's area and were chosen to bracket subject's value. An extensive search was conducted by appraiser to find the best similar available and recent sales of properties to best reflects subject's most probable market value as of the effective date of the appraisal. Adjustments were made to the comparables in order to isolate the actual contributory value of each item. Final subject valuation was bracketed by the adjusted sale price of comparables.

The comparables are all verified closed sales from the subject market area. The comparables are noted to be the most similar in age, condition, quality and appeal. The comparables bracket the subject's utility, amenities, and GLA. The sales provided are considered to be the best available as of the effective date of the appraisal. The adjusted range is $565,000 - $630,000. The final estimate of value is determined to be $600,000 with recent comps 1-3 given the most consideration towards value. Typical exposure time for the market area is 90-120 days.

**Comparables Prior Sale History:**
Comparables do not have a prior 12 month sale history.

**Additional Information:**
PERSONAL PROPERTY: Personal property includes such items as furnishings, artwork, antiques, machinery, and equipment. No personal property was included in the valuation of the subject.

FEMA FLOOD DATA: Readers/users of this appraisal must note that the FEMA flood hazard information noted herein (in regards tot he subject) can not be guaranteed by the appraisers. The appraisers are not qualified experts in the determination of flood hazards and make no representations as to the FDMA flood zones or the necessity of flood insurance for the subject. The reader/user is advised to obtain a separate independent Flood FDMA, unless otherwise noted or included herein as an exhibit. Flood information noted in this appraisal was obtained from NDC services.

ZONING DATA: Zoning information was derived from NDC or other sources deemed reliable. However, the accuracy of the data can not be guaranteed.

STRUCTURAL/MECHANICAL DEFECTS: Unless specifically noted, this appraisal is based on the special assumption that the subject does not have any structural or mechanical defects. It is assumed that all mechanical equipment and appliances are in satisfactory working condition, unless otherwise noted, and that the electrical/plumbing systems are also adequate, unless otherwise noted. The appraisers are not experts in these areas (not licensed or qualified home inspector) and have not tested the subject to ensure that all of the above is in working condition. The pest control report (or termite report) and home inspection report if any, were not provided to the appraisers. Lastly, this appraisal is based on the special assumption that the roof and foundation systems area adequate. But again, the appraisers are not experts in these fields and have not tested the subject in these regards.

ADVERSE ENVIRONMENTAL CONDITIONS: There were no obvious environmental hazards present in the improvements, on the site or in the vicinity of the subject property that we noted as the time of the inspection. The value of the property in this report is based on the assumption that the property is not negatively affected by the presence of hazardous substances or detrimental environmental conditions. The appraisers are not experts in the identification of hazardous substances or detrimental environmental conditions. It is possible that tests and inspections made by a qualified hazardous substances and environmental expert would reveal the existence of hazardous materials and environmental conditions on or around the subject property that would negatively affect its value.

## Supplemental Addendum

File No JBMS041616

| Client | Denny and Suzanne Tedesco | | | | |
|--------|---------------------------|--|--|--|--|
| Property Address | 22640 Califa St | | | | |
| City | Woodland Hills | County  Los Angeles | State  CA | Zip Code  91367 | |
| Owner | Tedesco, Denny J & Suzanne | | | | |

COMPETENCY STATEMENT: The appraisers have analyzed/appraised the subject's property type before. The appraisers possess the necessary knowledge and experience to complete this report in conformity with the competency provision of the USPAP. The appraiser signing on the right, supervised the appraisal process, has made a through review of the work file including the finished report, has recommended changes where appropriate, and concurs with the analyses and value conclusions stated herein. The appraisers accept full and complete responsibility for the appraisal report.

PURPOSE OF THE REPORT (SCOPE OF THE REPORT): The purpose of this report is to estimate the market value of the subject property.

FUNCTION (INTENDED USE) OF REPORT: The function of this report is for estate planning purposes. This appraisal report is not intended for use in a mortgage finance transaction. This report is not intended for any other use or uses and shall be invalid if used for any other function. Furthermore, this report may only be used by the noted client, as indicated on the top of the appraisal form. This report may not be given to and may not be utilized by a third party. The appraisers and appraisal firm will have no obligation to reissue this report to any other party.

REAL PROPERTY INTERESTS DEFINED: A Fee Simple interest is defined as "Absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power, and escheat." [Dictionary of Real Estate Appraisal, 3rd Ed.]

DIGITAL SIGNATURES: This report may contain digitally-reproduced signatures, which are approved by FNMA, GNMA, FHA and HUD. The A la Mode appraisal software program allows an appraiser to attach a digitally-reproduced signature by entering a secret password known only to the signing appraiser. Furthermore, after the report is digitally signed, it is locked and cannot be altered by anyone but the signing appraisers. The appraisers accept full responsibility for the appraisal report.

DIGITAL PHOTOGRAPHS: This report may contain digitally-reproduced photographs, which are approved by FNMA, GNMA, FHA, and HUD. The photos have not been altered or enhanced in anyway that would misrepresent the property or mislead the intended user of this report. The appraisers accepts full responsibility for the appraisal.

**Plat Map**

| Client | Denny and Suzanne Tedesco | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 22640 Califa St | | | | | | |
| City | Woodland Hills | County | Los Angeles | | State | CA | Zip Code | 91367 |
| Owner | Tedesco, Denny J & Suzanne | | | | | | |



## Location Map

| Client | Denny and Suzanne Tedesco | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Property Address | 22640 Califa St | | | | | | | |
| City | Woodland Hills | | County | Los Angeles | | State | CA | Zip Code | 91367 |
| Owner | Tedesco, Denny J & Suzanne | | | | | | | |



## Aerial Map

| Client | Denny and Suzanne Tedesco | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 22640 Califa St | | | | | | |
| City | Woodland Hills | County | Los Angeles | State | CA | Zip Code | 91367 |
| Owner | Tedesco, Denny J & Suzanne | | | | | | |



## Subject Photo Page

| Client | Denny and Suzanne Tedesco | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 22640 Califa St | | | | | |
| City | Woodland Hills | County | Los Angeles | State | CA | Zip Code | 91367 |
| Owner | Tedesco, Denny J & Suzanne | | | | | |



**Subject Front**

22640 Califa St
| | |
|---|---|
| Sales Price | 0 |
| Gross Living Area | 2,096 |
| Total Rooms | 9 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3 |
| Location | Suburban/Avg |
| View | Residential/Avg |
| Site | 15,121 Sq.Ft. |
| Quality | Average |
| Age | 58 |



**Subject Rear**



**Subject Street**

## Photograph Addendum

| Client | Denny and Suzanne Tedesco | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 22640 Califa St | | | | | |
| City | Woodland Hills | County | Los Angeles | State | CA | Zip Code | 91367 |
| Owner | Tedesco, Denny J & Suzanne | | | | | |



**Reverse Street View**



**Dining Area**



**Kitchen**



**Living Room**



**Master Bedroom #1**



**Master Bathroom #1**

## Photograph Addendum

| Client | Denny and Suzanne Tedesco | | | | |
|---|---|---|---|---|---|
| Property Address | 22640 Califa St | | | | |
| City | Woodland Hills | County | Los Angeles | State CA | Zip Code 91367 |
| Owner | Tedesco, Denny J & Suzanne | | | | |



**Bedroom #2**



**Bedroom #3**



**Bathroom #2**



**Add'l Bathroom #2 View**



**Bathroom #3**



**Add'l Bathroom #3 View**

## Photograph Addendum

| Client | Denny and Suzanne Tedesco | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 22640 Califa St | | | | | | |
| City | Woodland Hills | | County | Los Angeles | State CA | Zip Code | 91367 |
| Owner | Tedesco, Denny J & Suzanne | | | | | | |



Pool



Spa



Detached Garage



Chipped and Peeling Paint At Garage




Asphalt Driveway with Cracks and Needed
Maintenance



Additional Front View Subject

## Comparable Photo Page

| Client | Denny and Suzanne Tedesco | | | |
|---|---|---|---|---|
| Property Address | 22640 Califa St | | | |
| City | Woodland Hills | County Los Angeles | State CA | Zip Code 91367 |
| Owner | Tedesco, Denny J & Suzanne | | | |



### Comparable 1

22301 Welby Way

| | |
|---|---|
| Prox. to Subject | 1.20 miles NE |
| Sale Price | 615,000 |
| Gross Living Area | 1,726 |
| Total Rooms | 9 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.1 |
| Location | Suburban/Avg |
| View | Residential/Avg |
| Site | 7,510 sf |
| Quality | Average |
| Age | 38 |



### Comparable 2

22732 Hamlin St

| | |
|---|---|
| Prox. to Subject | 0.82 miles N |
| Sale Price | 575,000 |
| Gross Living Area | 1,661 |
| Total Rooms | 6 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2 |
| Location | Suburban/Avg |
| View | Residential/Avg |
| Site | 7,919 sf |
| Quality | Average |
| Age | 60 |



### Comparable 3

22718 Haynes St

| | |
|---|---|
| Prox. to Subject | 0.88 miles N |
| Sale Price | 550,000 |
| Gross Living Area | 2,009 |
| Total Rooms | 6 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2 |
| Location | Suburban/Avg |
| View | Residential/Avg |
| Site | 7,919 sf |
| Quality | Average |
| Age | 59 |

## Comparable Photo Page

| Client | Denny and Suzanne Tedesco | | | | |
|---|---|---|---|---|---|
| Property Address | 22640 Califa St | | | | |
| City | Woodland Hills | County | Los Angeles | State CA | Zip Code 91367 |
| Owner | Tedesco, Denny J & Suzanne | | | | |



### Comparable 4

5610 Fallbrook Ave
| | |
|---|---|
| Prox. to Subject | 0.36 miles SW |
| Sale Price | 550,000 |
| Gross Living Area | 1,532 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2 |
| Location | Suburban/Busy St |
| View | Residential/Avg |
| Site | 7,137 sf |
| Quality | Average |
| Age | 62 |



### Comparable 5

6124 Fallbrook Ave
| | |
|---|---|
| Prox. to Subject | 0.37 miles NW |
| Sale Price | 575,000 |
| Gross Living Area | 1,596 |
| Total Rooms | 8 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Suburban/Busy St |
| View | Residential/Avg |
| Site | 8,114 sf |
| Quality | Average |
| Age | 68 |



### Comparable 6

22738 Burbank Blvd
| | |
|---|---|
| Prox. to Subject | 0.39 miles SW |
| Sale Price | 579,000 |
| Gross Living Area | 1,704 |
| Total Rooms | 8 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Suburban/Busy Rd |
| View | Residential/Avg |
| Site | 6,748 sf |
| Quality | Average |
| Age | 63 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

15233 Ventura Boulevard, Suite 250, Sherman Oaks, CA 91403

A true and correct copy of the foregoing document entitled: **DEBTOR'S NOTICE OF MOTION AND MOTION TO AVOID JUNIOR LIEN ON PRINCIPAL RESIDENCE [11 U.S.C. § 506(d)] AND** _____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 05/04/2016 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Elizabeth F. Rojas            cacb_ecf_sv@ch13wla.com
United States Trustee        ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (*date*) 05/04/2016 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 05/04/2016 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Judge's Copy Honorable Martin R. Barash 21041 Burbank Blvd. Suite 342 / Ctrm. 303 Woodland Hills, CA 91367

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 05/04/2016 | Maria Escobar | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2012*                        Page 6                        **F 4003-2.4.JR.LIEN.MOTION**

## CONTINUED SERVICE LIST

**Debtors (Certified Mail)**
Denny Tedesco
Suzie Tedesco
22640 Califa Street
Woodland Hills, CA 91367

**Chapter 13 Trustee (Certified Mail)**
Elizabeth (SV) F Rojas (TR)
Valley Executive Center
15260 Ventura Blvd., Suite 710
Sherman Oaks, CA 91403

**United States Trustee (SV) (Certified Mail)**
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 91007

## FIRST DEED OF TRUST

**Specialized Loan Servicing, LLC  (Statement & Entity) (Certified Mail)**
8742 Lucent Boulevard, Suite 300
Highlands Ranch, CO 80129-2386
Attn: John Beggins, CEO

**Agent for Service of Process for Specialized Loan Servicing, LLC (Certified Mail)**
NATIONAL REGISTERED AGENTS, INC.
100 CANAL POINTE BLVD STE 212
PRINCETON NJ 08540

**Agent for Service of Process for Specialized Loan Servicing, LLC (Certified Mail)**
C T CORPORATION SYSTEM
818 WEST SEVENTH ST STE 930
LOS ANGELES CA 90017

## SECOND DEED OF TRUST

**Wells Fargo Bank, N.A. (Statement) (Certified Mail)**
PO Box 10335
Des Moines, IA 50306
Attn: John G. Stumpf, President & CEO

**Wells Fargo Bank, N.A. (FDIC & Entity)(Certified Mail)**
Attn: John G. Stumpf, President & CEO
101 N. Phillips Avenue
Sioux Falls, South Dakota 57104

**Agent for Service of Process for Wells Fargo Bank, N.A. (Certified Mail)**
CSC - Lawyers Incorporating Service
2710 Gateway Oaks Drive
Suite 150 N
Sacramento, CA 95833